UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

CASE NO.: 23-21481-cv-WILLIAMS/REID

MARILYN JONES, et al.,

    Plaintiffs,

v.

CELEBRITY CRUISES, INC.,

    Defendant.

_____/

## DEFENDANT'S MOTION TO DISMISS

Defendant, Celebrity Cruises, Inc., ("Celebrity") moves to dismiss Plaintiffs' complaint with prejudice under Federal Rule of Civil Procedure 12(b)(6).

### Introduction

Robert Jones died of natural causes while cruising onboard the *Celebrity Equinox* with his wife, Marilyn Jones, in August 2022. After his death, Celebrity assisted Mrs. Jones in making arrangements for his body, which was to be stored in the ship's onboard morgue cooler. Unfortunately, however, the morgue cooler malfunctioned during the cruise.

Celebrity employees responded to the situation by clearing a walk-in cooler to store the body for the remaining days of the cruise. Plaintiffs, all family members of Mr. Jones, contend Mr. Jones's body unduly decomposed because of Celebrity's actions. They bring a single claim of tortuous interference with a dead body.

To succeed on their claim, Plaintiffs must allege facts suggesting that they suffered a physical injury or that Celebrity acted with willful or wanton misconduct. Plaintiffs allege neither.

Accordingly, they fail to state a claim upon which relief can be granted, and this court should dismiss the complaint.

### Factual Allegations in the Complaint

After Mr. Jones passed away from a cardiac event onboard the *Celebrity Equinox* at 79 years old, Celebrity worked with and assisted Mrs. Jones to determine the best way to store his body. [¶¶ 10–15]. There were two options: (1) disembark his body from the ship in San Juan, Puerto Rico, to the local coroner's office or a funeral home; or (2) store his body onboard for the remaining six days of the cruise. [¶ 10]. Celebrity advised Mrs. Jones that, if the body was disembarked, she would have to stay with her husband's remains and there was a fifty-percent chance that the local coroner's office would perform an autopsy before releasing the body to a funeral home; and if the coroner autopsied, there was no timeline for when the body would be released. [¶¶ 11–12]. Because of the uncertainty, Mrs. Jones chose to store the body in the onboard morgue rather than disembark in Puerto Rico. [¶¶ 14–15].

Unfortunately, the morgue stopped working properly, rendering it unable to keep the body at a sufficiently cold temperature to prevent all decomposition. [¶ 24]. Once Celebrity realized the defect, Celebrity employees cleared out a walk-in cooler on a different floor to store the body. [¶ 18]. Plaintiffs contend the walk-in cooler was "not a suitable replacement for the morgue" and caused the body to reach "advanced stages of decomposition." [¶¶ 20–25]. Plaintiffs allegedly suffered "extreme trauma" because of the need for a closed-casket funeral and the "mental images" associated with visualizing Mr. Jones decomposing. [¶¶ 37–38]. They blame Celebrity and its crew for interfering "with the peaceful resting of Robert Jones after his death" and seek one million dollars ($1,000,000.00) in compensation. [¶¶ 35–36 and p. 11, "wherefore" clause].

CASE NO.: 23-21481-cv-KMW

## Memorandum of Law

Plaintiffs' claim can succeed only if they prove Celebrity acted with willful or wanton misconduct that amounts to malice. Celebrity, however, did what it could under the circumstances to prevent harm to the body by placing it in a walk-in cooler and certainly did not commit intentional malicious misconduct. Because Celebrity did not act with willful or wanton misconduct, there is no plausible claim for tortuous interference with a dead body, and this case should be dismissed.

**I.       General maritime law governs this action, but Florida law can supplement.**

General maritime law applies in cases, such as this one, that allege torts in navigable waters. *See Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1321 (11th Cir. 1989). "Drawn from state and federal sources, the general maritime law is an amalgam of traditional common-law rules, modifications of those rules, and newly created rules." *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 864–65 (1986) (citations omitted). In tort actions governed by general maritime law, a cruise line owes its passengers a duty of "ordinary reasonable care under the circumstances." *See Keefe*, 867 F.2d at 1322.

Despite general maritime law governing this action, it does not wholly exclude state law. *See Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 209–16 (1996). When general maritime law is silent on a legal remedy, courts can look to state law to supplement maritime law and provide a cause of action or defense so long as the state law does not "work[] material prejudice to the characteristic features of the general maritime law or interfere[] with the proper harmony and uniformity of that law in its international and interstate relations." *See Am. Dredging Co. v. Miller*, 510 U.S. 443, 447 (1994) (citing *Southern Pac. Co. v. Jensen*, 244 U.S. 205, 216 (1917)).

General maritime law is silent as to claims of tortuous interference with a dead body, at least in the Eleventh Circuit. Only one court has considered such a claim in a case governed by

maritime law. *See Sexton v. Carnival Corp.*, 504 F. Supp. 3d 1359, 1364–65 (S.D. Fla. 2020). At summary judgment, the court applied Florida law without dispute. *See* 2021 WL 2400274, *5–6 (S.D. Fla. June 11, 2021), *amended on reconsideration on other grounds*, 2021 WL 3006916 (S.D. Fla. July 15, 2021).

Similarly, if state law can supplement here, it must be Florida law. Each *Lauritzen* factor weighs in favor of Florida: six of the seven parties are domiciled here, it is the contracted-for forum state, and the alleged tort was discovered in Fort Lauderdale, which is where the cruise began and ended. *See Goodloe v. Royal Caribbean Cruises, Ltd.*, 1 F.4th 1289, 1293–98 (establishing the "Domestic *Lauritzen* Test" as the method for determining the choice of state law to supplement maritime law); *see also* [ECF No. 1 at ¶¶ 1–3, 5, 18]. Accordingly, despite general maritime law governing the action, Florida law provides Plaintiffs a vehicle for bringing their claim for tortuous interference with a dead body. *See Kirksey v. Jernigan*, 45 So. 2d 188, 189–90 (Fla. 1950).

**II.     Under Florida law, Plaintiffs have no plausible claim because they suffered no physical injury and Celebrity did not act with willful or wanton misconduct.**

"An action for mental anguish based on negligent handling of a dead body requires proof of either physical injury or willful or wanton misconduct." *Gonzalez v. Metro. Dade Cnty. Pub. Health Trust*, 651 So. 2d 673, 676 (Fla. 1995). Plaintiffs do not allege that they suffered a physical injury, and there are no allegations indicating Celebrity acted with willful or wanton misconduct. Therefore, Plaintiffs have no claim for tortuous interference with a dead body against Celebrity, and the Court should dismiss the complaint with prejudice.

**A.     Plaintiffs do not allege a physical injury.**

The impact rule applies to claims for tortuous interference with a dead body. *See Gonzalez*, 651 So. 2d at 675–76. Under the impact rule, to recover emotional distress damages, "the emotional distress suffered must flow from physical injuries the plaintiff sustained in an impact."

*Florida Dept. of Corrections v. Abril*, 969 So. 2d 201, 206 (Fla. 2007) (citations omitted). "[I]ntangible, mental injuries are insufficient" to pass muster. *See Whiddon v. Service Corp. Int.*, --- F. Supp. 3d ---, 2022 WL 4180983, *2 (N.D. Fla. Sep. 7, 2022) (granting summary judgment in favor of funeral home on negligence claims relating to mishandling of burial due to lack of physical impact) (citations omitted). "The traditional rationale for this rule was to insure the authenticity of mental distress claims." *Gonzalez*, 651 So. 2d at 674.

The impact rule often defeats claims for negligent mishandling of a dead body. *See Elliot v. Elliot*, 58 So. 3d 878, 881 (Fla. 1st DCA 2011) (collecting cases). In fact, many plaintiffs concede there is no physical impact in similar claims. *See Gonzalez*, 651 So. 2d at 674; *Williams v. Boyd-Panciera Family Funeral Care, Inc.*, 293 So. 3d 499, 500 (Fla. 4th DCA 2020); *Mellette v. Trinity Mem. Cemetery, Inc.*, 95 So. 3d 1043, 1046 (Fla. 2d DCA 2012). Some plaintiffs have argued that the impact rule should not apply to such cases due to the unique injuries involved, but the Florida Supreme Court disagreed. *See Gonzalez*, 651 So. 2d at 676 ("The consequences of such an exception are too far reaching in a modern society where it is recognized that not all wrongs can be compensated through litigation or the courts."). Because "there is no accurate method of separating the natural grief resulting from the death of a loved one from the additional grief suffered as a result of mishandling of the body," the Florida Supreme Court "reaffirmed" that the impact rule applies to the claims raised by Plaintiffs here. *See Gonzalez*, 651 So. 2d at 675–76.

Plaintiffs' injuries sound only in mental distress. [ECF No. 1 at ¶¶ 35–38]. There are no physical impacts or physical injuries alleged. Thus, just like the plaintiffs in *Whiddon*, *Elliot*, *Gonzalez*, and *Williams*, Plaintiff cannot satisfy the impact rule.

**B.   Celebrity did not commit willful or wanton misconduct.**

Under Florida law, in the absence of a physical injury, a plaintiff can still recover mental distress damages by proving the damages arose from the defendant's willful or wanton

misconduct. *See Gonzalez*, 651 So. 2d at 676. To find willful or wanton misconduct, Celebrity must have acted so outrageously and so extremely as to go beyond all bounds of decency. Here, Celebrity's alleged actions were, at worst, simple negligence. After realizing the morgue was broken, Celebrity moved Mr. Jones's body to a functioning cold place on the vessel that was large enough to house him. If Celebrity made a mistake in keeping him in too warm of conditions, then it was simple negligence, and negligence is insufficient to impose liability here. Because Plaintiffs did not plead facts supporting Celebrity acted with willful or wanton misconduct, as required by law, Celebrity cannot be liable for tortuous interference with Mr. Jones's body.

      i.    *Plaintiffs do not plead plausible claims of willful, reckless, or outrageous behavior.*

To survive this motion to dismiss for failure to state a claim, Plaintiffs must have alleged facts, not threadbare legal conclusions, giving rise to a plausible inference that Celebrity acted with willful or wanton misconduct. *See Gonzalez*, 651 So. 2d at 676; *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Plaintiffs, however, fail to meet the *Iqbal*/*Twombley* standard. They merely regurgitate legal conclusions—repeatedly claiming Celebrity "acted recklessly, willfully and wantonly, and without care" and similar—without providing any facts indicating Celebrity did anything more than commit an innocent mistake. [ECF No. 1 at ¶¶ 28–35]. The complaint's allegations do not reach the "heightened level of conduct" needed to state a claim for tortuous interference with a dead body. *See Whiddon*, 2022 WL 4180983 at *3.

Allegations supporting only negligence are insufficient. *See Gonzalez*, 651 So. 2d at 676. Instead, Plaintiffs had to allege facts from which an inference can be made that Celebrity's actions were "so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community." *Whiddon*, 2022 WL 4180983 at *3 (citations omitted). Florida courts are consistent in holding that this standard

presents a "particularly high" bar. *See, e.g., Clemente v. Horne*, 707 So. 2d 865, 867 (Fla. 3d DCA 1998). To plausibly plead willfulness, Plaintiffs must provide factual allegations indicating Celebrity knew "severe distress [was] certain, or substantially certain" to result from its conduct and proceeded anyway. *See Hart v. U.S.*, 894 F.2d 1539, 1548 (11th Cir. 1990) (citing *Ford Motor Credit Co. v. Sheehan*, 373 So. 2d 956, 958 (Fla. 1st DCA 1979)).

Whether actions amount to willful or wanton misconduct is "typically a question of law" to be decided by the Court. *See Williams*, 293 So. 3d at 501 (citing *Matsumoto v. Am. Burial & Cremation Servs., Inc.*, 949 So. 2d 1054, 1056 (Fla. 2d DCA 2006)). Here, Plaintiffs' factual allegations are insufficient to state a claim for tortuous interference with a dead body because they do not give rise to an implication that Celebrity committed willful or wanton misconduct. *See Gonzalez*, 651 So. 2d at 676.

    *ii.*    *Negligent mistakes are insufficient to impose liability under Florida law.*

Florida state and federal courts consistently find no liability when, as claimed here, a dead body is allegedly mishandled due to mistakes or accidents. For example, in *Gonzalez*, the plaintiffs were parents of an infant who died only a week after birth. *See* 626 So. 2d 1030 (Fla. 3d DCA 1993), *aff'd* 651 So. 2d 673 (Fla. 1995). The parents had a funeral and a burial, but then the morgue notified them that it sent the wrong infant's body to the funeral home—the parents had buried someone else's child. So, the parents had to go through the burial process once more with the actual body of their own child. They brought claims for negligent mishandling of a corpse against the morgue.

There was no willful or wanton misconduct in *Gonzalez*. *See* 651 So. 2d at 1031. The court granted summary judgment in favor of the morgue, which was affirmed, because there was no proof of physical impact or malicious conduct in sending the wrong body. It was simply a mistake. *See Gonzalez*, 626 So. 2d at 1033; *see also Williams v. Boyd-Panciera Family Funeral Care, Inc*,

293 So. 3d at 501 (affirming summary judgment in favor of funeral home on a claim arising from the funeral home negligently losing cremated remains because there was no evidence to support "a finding of willful, wanton, malicious, or outrageous behavior").

Similarly, in *Hart v. U.S.*, the United States committed mistakes in "identifying, classifying, [and] attempting to bury the remains" of a soldier who was unaccounted-for and then, based on a misidentification, was later deemed killed in action. *See* 894 F.2d 1539, 1548–49 (11th Cir. 1990). Among other claims, the soldier's family alleged the United States intentionally inflicted emotional distress when it misidentified his remains. *See id.* at 1543. In analyzing the merits under Florida law, the Eleventh Circuit opined that "the Government ha[d] not intentionally foisted a mistake upon the Harts. It made its identification as best it could . . . ." *Id.* at 1548–49. Because the allegations rose only to mere mistakes and there was no evidence that the government's acts "were committed with the knowledge that they would cause severe distress," the summary judgment granted in favor of the family was reversed. *See id.* at 1548–49.

Courts also find no liability when a funeral or burial is ruined due to a mistake. In *Whiddon*, as the family buried their child, the casket protruded from the ground at an angle. Upon protest, the funeral director assured the family that the casket would settle; but, according to the plaintiffs, it never did on its own. *See* 2022 WL 4180983 at *1. Rather, the funeral home had to disinter the vault and re-bury the body. On two grounds, the family contended the funeral home "intentionally, knowingly, and purposely caused their distress" in experiencing the botched burial and the re-burial: (1) the funeral home ordered too small of a casket and (2) the funeral director knew the casket was unlevel and carelessly left it protruding from the ground. *See id.* at *3.

The Northern District of Florida found no liability. Even in the light most favorable to the plaintiffs, the court found that the funeral home's mistakes "would be just that: mistakes. Plaintiffs

offer[ed] no evidence suggesting [the funeral home's] conduct was 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency.'" *See id.* (citations omitted); *see also Estate of Harper v. Orlando Funeral Home, Inc.*, 366 So. 2d 126, 128 (Fla. 1st DCA 1979) (finding no malicious, reckless, or indifferent conduct when funeral home supplied a casket that collapsed, causing the body to fall through, as it was transported from the hearse to the grave during the funeral).

There is no actionable claim for tortuous interference with a dead body when the defendant had a good-faith reason to interfere with the body without the family's consent. For example, in *Sexton*, like here, the decedent died onboard a cruise ship due to a cardiac event. *See* 2021 WL 2400274 at *1. Cruise line employees took 36 pictures of the body, including 24 naked pictures, without obtaining the family's permission, which allegedly caused them mental distress upon seeing the pictures. *See id.* at *5. In applying Florida law to the claim of tortuous interference with a dead body, the court found that "[a]lthough Carnival did not seek permission to take the photographs, Carnival did not act in a deceitful manner by intentionally lying to Sexton's family or disregarding the family's express wishes or instructions." *Id.* "Carnival did not interfere with the family's right to control Sexton's body or affect their right to a burial." *Id.* Rather, Carnival simply adhered to its policies to exclude trauma as a cause of death, which did "not constitute malicious conduct." *See id.* Since the plaintiff could not prove malicious conduct in photographing the naked dead body, the court granted summary judgment in favor of Carnival.

In each of these cases, the court found no willful or wanton misconduct, yet in some cases, the facts were more severe than alleged here. Celebrity did not lose or misidentify the remains— as the defendants did in *Gonzalez*, *Williams*, and *Hart*—so the Plaintiffs were able to bury Mr. Jones's actual body during the funeral. Celebrity did not intentionally disregard Mrs. Jones like

the funeral director allegedly did in *Whiddon*. If there was no willful or wanton misconduct in those cases, there should be a similar finding here.

Plaintiffs do not allege anything worse than a mistake committed in response to an unfortunate situation. Celebrity put Mr. Jones's body into a walk-in cooler—perhaps the only cold place onboard that could fit the body—after the morgue cooler stopped working. At worst, Celebrity may have made a good-faith mistake to put the body in the walk-in cooler, which resulted in a closed-casket funeral. These facts are less severe than *Gonzalez*, *Williams*, *Hart*, and *Whiddon*. Certainly, they are less severe than the cases where courts found the plaintiff plausibly stated a claim of willful or wanton misconduct.

    iii.    *Courts require malicious actions toward the surviving family for a plausible claim.*

Because the emotional distress belongs to the family members, to state a claim, courts typically require the malicious actions to be aimed toward the family. There are no allegations here, however, that Celebrity acted deceptively, in self-interest, or with intentional disregard of the Plaintiffs' rights. Accordingly, the Court should find the cases in favor of liability distinguishable from the facts in this case.

Intentionally deceiving the family is a common occurrence in cases where the plaintiff has a plausible claim. For example, in *Sherer v. Rubin Mem. Chapel, Ltd.*, the decedent's family sued because the funeral home placed the wrong body in the casket. *See* 452 So. 2d 574, 574–75 (Fla. 4th DCA 1984). If that was the extent of the funeral home's actions, there may not have been liability, but the funeral home "allegedly spent one-half hour trying to convince [the family] that the body was the decedent." *Id.* at 574. Then, after the funeral home finally admitted its mistake, employees "removed the burial clothing from the wrong corpse and, rather than properly dressing and preparing the decedent's corpse for the planned open casket service, simply threw the burial clothing over the unprepared corpse leaving numerous ugly bruises on her arms exposed." *Id.* at

574–75. The appellate court found these facts were sufficient to state a claim of malice. *See id.* at 575.

The plaintiff in *Kirksey* stated a plausible claim because the defendant acted with malicious self-interest in taking advantage of the family. *See* 45 So. 2d 188 (Fla. 1950). In *Kirksey*, a five-year-old child was accidently killed, and an undertaker took the body before the parents even arrived at the scene. Within two hours of the accident, the decedent's mother was at the undertaker's establishment demanding her child's body, but the undertaker refused to surrender it. This refusal persisted for multiple demands over multiple days. Ultimately, the undertaker allegedly embalmed the body without permission, charged the family double the normal price for embalming it, and then held the body as security until the family paid the price. The Florida Supreme Court found these facts were sufficient to "imply malice" and, thus, state a claim for tortiously interfering with the dead body. *See id.* at 189.

In *Mellette v. Trinity Mem. Cemetery, Inc.*, the defendant committed illegal business acts, lied to the plaintiff, and disregarded her expressed conditions, which, together, created a fact issue as to wanton misconduct at summary judgment. *See* 95 So. 3d 1043, 1047 (Fla. 2d DCA 2012). The issues in *Mellette* stemmed from a dispute between the plaintiff-widow and her mother-in-law. The decedent was buried in Florida at the defendant's cemetery. The decedent's mother paid for the plot and told the widow that, if the widow ever remarried, she would like the body to be moved to Texas to be with the decedent's family. But the widow refused the mother-in-law's request when she remarried after a few years. Then the decedent's family sent her many letters reiterating their request to move the decedent's body to Texas, which she ignored.

Fearing that the decedent's family would act unilaterally to move the body, the widow called the defendant's cemetery to warn them not to permit a transfer. In response, the defendant

told her that Florida law requires signatures from both the next of kin and the owner of the plot to transfer the body, so both she (and the body) could rest assured. Three years after that conversation, however, the cemetery informed the plaintiff that the body had been transferred without her signature. She brought a claim against the cemetery sounding in tortuous interference with a dead body.

Although there was "no question" that the cemetery's disinterment violated Florida law, it moved for summary judgment, arguing its actions relating to the illegal transfer were not outrageous. *See id.* at 1046. The trial court agreed, but the Second DCA reversed. It found an issue of fact because, despite Florida law requiring a signature, the cemetery's "standard form for disinterments did not even call for the signature of the deceased's next of kin, and [the cemetery] proceeded to remove the body and transport it away without even informing [the next of kin]" after she "expressly voiced her opposition and [the defendant] had vouched" that it would not happen. *See id.* at 1047. These facts precluded summary judgment because a jury could find such conduct exhibited "an entire want of care of attention to duty." *Id.*

The crucial, dispositive factors in these three cases were the defendant's actions toward the plaintiffs themselves: the defendant deceiving or lying to the plaintiff (*Sherer*); the defendant acting in its own self-interest to the plaintiff's detriment (*Kirksey*) or the defendant acting with an entire want of care for its legal duties toward the plaintiff and doing the opposite of what the plaintiff specifically requested (*Mellette*).

In distinguishing these cases, courts have focused on the defendants' actions toward the surviving family members making a claim. *See Hart*, 894 F.2d at 1549 (distinguishing *Kirksey* and *Sherer* because the defendant did not "intentionally foist[] a mistake upon the Harts"); *Sexton*, 2021 WL 2400274 at *5–6 (distinguishing *Kirksey* and *Sherer* because the defendant "did not act

in a deceitful manner by intentionally lying" to the family or "interfere with the family's right to control" the body). This distinction is crucial because the emotional distress must arise from the defendants' willful or wanton misconduct, which can be felt only by the family. *See Gonzalez*, 651 So. 2d at 675–76 ("[T]here is no accurate method of separating the natural grief resulting from the death of a loved one from the additional grief suffered as a result of mishandling of the body."). The emotional distress claims belong to the family, not the decedent's body.

There is no reasonable inference suggesting Celebrity acted maliciously toward Plaintiffs. Unlike *Sherer*, *Kirksey*, and *Mellette*, Celebrity had no motive to induce Mrs. Jones to keep the body onboard (rather than debark in Puerto Rico) and Celebrity was not placed in a superior financial position by interfering with the body (one could even infer that Celebrity put itself in a slightly worse position by clearing out the walk-in cooler). Celebrity never intentionally deceived Mrs. Jones or acted in its self-interest to the Plaintiffs' detriment. In conclusion, like *Hart* and *Sexton*, this case is easily distinguishable from those where defendants plausibly committed willful or wanton misconduct amounting to malice toward the family.

> iv. *Assuming all allegations are true, at worst, Celebrity was merely negligent in representing that the morgue cooler would be fully functional for six days.*

Mrs. Jones was treated with fairness, compassion, and empathy. Celebrity acted in accordance with what it believed was her best interest. Knowledgeable employees gave Mrs. Jones the information she needed to make an informed decision regarding whether to disembark the body. Then, upon realizing the morgue cooler was faulty, Celebrity worked to move the body to a cleared-out walk-in cooler. Even though the results were suboptimal, these actions by Celebrity employees were "reasonable under the circumstances" when the circumstances involve a broken morgue cooler onboard a cruise ship at sea. *See Keefe*, 687 F.2d at 1322. And even if the actions

were not reasonable under the circumstances, they certainly did not rise to the level of liability for tortuous interference with a dead body, *i.e.*, willful or wanton misconduct.

Plaintiffs contend Celebrity negligently misrepresented that the morgue was functional and negligently maintained it. [ECF No. 1 at ¶ 27(d), ¶ 32]. Plaintiffs, however, do not allege any facts to indicate Celebrity intentionally misrepresented its status to deceive Mrs. Jones. Rather, the facts sound only in Celebrity's mistaken belief that the morgue cooler was and would be working for the remainder of the cruise. Mistakenly stating that the morgue cooler would be fully functional for six days is, at worst, a negligent misrepresentation. It is not intentional misconduct, which means there can be no liability for tortuous interference with a body. *See Gonzalez*, 651 So. 2d at 676.

Plaintiffs also allege Celebrity negligently "encouraged" Mrs. Jones to keep the body on the ship rather than disembarking to Puerto Rico. [ECF No. 1 at ¶ 27]. In support, Plaintiffs allege Mrs. Jones suffered emotional distress because Celebrity said (a) "her husband's body had a 50/50 chance of being autopsied in Puerto Rico if he was removed from the ship"; (b) "that she would have to remain alone in Puerto Rico with his body for days while it was autopsied and embalmed"; and (c) someone would have to stay with the remains. [ECF No. 1 at ¶ 27]. These were not deceptive remarks—they were true. Plaintiffs do not contest their veracity in the complaint. Thus, these allegations cannot even lead to a negligent misrepresentation claim, much less an intentional misconduct finding.

When analyzing the complaint's substance, Plaintiffs' claims boil down to two negligence theories: negligent misrepresentation [¶ 27] and negligent maintenance of the morgue cooler [¶ 32]. Negligence is insufficient, however, to impose liability for tortuous interference with a dead

body. There needs to be willful or wanton misconduct. Because Celebrity was merely negligent, at worst, Plaintiffs' only potential cause of action fails.

## Conclusion

For the foregoing reasons, the Court should find that Plaintiffs fail to state a claim upon which relief can be granted.

WHEREFORE, Defendant, Celebrity Cruises, Inc., respectfully requests that the Court dismiss the complaint with prejudice under Federal Rule of Civil Procedure 12(b)(6).

Respectfully submitted,

MASE SEITZ BRIGGS, P.A.
2601 South Bayshore Drive, Suite 800
Miami, Florida 33133
Telephone: (305) 377-3770
Facsimile: (305) 377-0080

By: /s/ Tyler Rauh
    CURTIS J. MASE
    Florida Bar No. 478083
    cmase@maselaw.com
    THOMAS A. BRIGGS
    Florida Bar No. 663034
    tbriggs@maselaw.com
    TYLER J. RAUH
    Florida Bar No. 1023404
    trauh@maselaw.com